1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   TONI L THOMPSON,

11                      Plaintiff,

12          v.

13   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,[1]

14

                     Defendant.

15

CASE NO. 2:16-CV-01447-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

16          Plaintiff Toni L. Thompson filed this action, pursuant to 42 U.S.C. § 405(g), for judicial

17   review of Defendant's denial of her applications for supplemental security income ("SSI") and

18   disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil

19   Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the

20   undersigned Magistrate Judge. *See* Dkt. 6.

21

22

23          [1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is
     substituted as Defendant for former Acting Commissioner Carolyn W. Colvin.  42 U.S.C. § 405(g); Fed. R. Civ. P.
24   25(d)(1).

1       After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

2 erred when she failed to adequately explain how the residual functional capacity ("RFC")

3 accounted for all the functional limitations opined to by state agency consultative psychologist

4 Dr. Dan Donahoe, Ph.D. The Court also finds the ALJ erred by failing to discuss significant,

5 probative evidence contained in the opinions of examining psychologists Dr. Holly Petaja, Ph.D.

6 and Dr. Carl Epp, Ph.D. Had the ALJ properly considered these three doctors' opinions, the RFC

7 may have included additional limitations. The ALJ's errors are therefore not harmless, and this

8 matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting

9 Commissioner for further proceedings consistent with this Order.

10                FACTUAL AND PROCEDURAL HISTORY

11       On September 11, 2013, Plaintiff filed applications for DIB and SSI, alleging disability as

12 of September 1, 2012. *See* Dkt. 9, Administrative Record ("AR") 11. The applications were

13 denied upon initial administrative review and on reconsideration. *See* AR 11. A hearing was held

14 before ALJ Kimberly Boyce on November 5, 2014. *See* AR 27-61. In a decision dated March 5,

15 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 11-21. Plaintiff's request for

16 review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the

17 final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

18       In Plaintiff's Opening Brief, Plaintiff maintains the ALJ committed harmful error by

19 failing to properly: (1) evaluate the opinions of (A) Dr. Dan Donahoe, Ph.D., and (B) Drs. Holly

20 Petaja, Ph.D. and Carl Epp, Ph.D.; and (2) determine if Plaintiff was capable of performing other

21 jobs in the economy at Step 5. *See* Dkt. 11, pp. 1-2.

22

23

24

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.      Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff contends the ALJ erred in her evaluation of the medical opinion evidence of Dr. Dan Donahoe, Ph.D., Dr. Holly Petaja, Ph.D., and Dr. Carl Epp, Ph.D. Dkt. 11, pp. 3-10.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews*, 53 F.3d at 1041). However, all of the determinative findings by the ALJ must be supported by substantial evidence. *See Bayliss*,

1   427 F.3d at 1214 n.1 (*citing Tidwell*, 161 F.3d at 601); *see also Magallanes*, 881 F.2d at 750

2   ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "relevant

3   evidence as a reasonable mind might accept as adequate to support a conclusion").

4          A.  Dr. Donahoe

5          Plaintiff first contends the ALJ erred when she gave significant weight to Dr. Dan

6   Donahoe's opinion, but did not include all the opined functional limitations in the RFC

7   determination. Dkt. 11, pp. 6-7.

8          Dr. Donahoe, a state agency consultative psychologist, completed a mental RFC

9   assessment of Plaintiff on March 10, 2014. AR 103-05. He opined, in relevant part, Plaintiff was

10  able to persist at simple, repetitive tasks in at least two hour intervals in an eight-hour workday.

11  AR 104. He found Plaintiff may have intermittent interruptions in her ability to complete a

12  normal workday/workweek, "but should be able to do so a majority of the time." AR 104. The

13  ALJ gave Dr. Donahoe's opinion significant weight, including Plaintiff's inability to complete a

14  normal workday/workweek without intermittent interruptions, and stated the limitations in Dr.

15  Donahoe's opinion were included in Plaintiff's RFC. AR 17-18.

16         In the RFC determination, the ALJ found Plaintiff can perform a full range of work at all

17  exertional levels. AR 15. She found, "[i]n order to meet ordinary and reasonable employer

18  expectations regarding attendance, production, and work place behavior," Plaintiff

19         can understand, remember and carry-out unskilled, routine and repetitive work.
        She can cope with occasional work setting changes and occasional interaction
20         with supervisors. She can work in proximity to coworkers, but not in a team or
        cooperative effort. She can perform work in a setting to which the general public
21         is not admitted.

22  AR 15-16.

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

1    It is unclear from the RFC if the ALJ adequately accounted for Dr. Donahoe's opinion

2  that Plaintiff would be able to complete a normal workday/workwork without intermittent

3  interruptions only a majority of the time. *See* AR 15-16. While the ALJ stated she accounted for

4  Dr. Donahoe's opined limitations, she does not explain how the RFC accounts for the opinion

5  regarding intermittent interruptions. *See* AR 17-18. Additionally, the RFC does not expressly

6  contain limitations concerning Plaintiff's inability to complete a normal workday/workweek

7  without intermittent interruptions. *See* AR 15-16. As the Court cannot determine if the ALJ

8  properly included all of Dr. Donahoe's limitations in the RFC or simply ignored the limitations,

9  the Court finds ALJ erred. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We

10 require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so

11 that we may afford the claimant meaningful review of the SSA's ultimate findings."); *Provencio*

12 *v. Astrue*, 2012 WL 2344072, *9 (D. Ariz., June 20, 2012) (finding the ALJ erred by giving

13 "great weight" to a consultative examiner's opinion, yet ignoring parts of the opinion).

14   "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

15 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

16 claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

17 *Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674

18 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific

19 application of judgment" by the reviewing court, based on an examination of the record made

20 "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at

21 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

22   Had the ALJ included all of Dr. Donahoe's limitations in the RFC, Plaintiff may have

23 been limited, for example, in her ability to remain on-task or attend work during a normal

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

1  workday/workweek. Therefore, if all the limitations opined to by Dr. Donahoe were included in

2  the RFC and in the hypothetical questions posed to the vocational expert, Steve Duchesne, the

3  ultimate disability determination may have changed.  Accordingly, ALJ's error is not harmless

4  and requires reversal.

5       B.  Drs. Petaja and Epp

6       Plaintiff next asserts the ALJ erred by failing to properly consider the opinions of

7  examining psychologists Drs. Holly Petaja, Ph.D. and Carl Epp, Ph.D. Dkt. 11, pp. 7-10.

8       Dr. Petaja competed a psychological/psychiatric evaluation of Plaintiff on September 13,

9  2012. AR 331-40. Dr. Petaja reviewed portions of Plaintiff's medical records, conducted a

10  clinical interview of Plaintiff, observed Plaintiff, and conducted a mental status examination

11  ("MSE") of Plaintiff. AR 331-35. She opined Plaintiff had mild or no limitations in her ability to

12  understand, remember and persist in tasks by following very short and simple instructions, but

13  had moderate to marked limitations in her ability to perform all other basic work activities. AR

14  333. She found Plaintiff had a global assessment functioning ("GAF") score of 50. AR 333.

15       On June 18, 2013, Dr. Epp completed a psychological/psychiatric evaluation of Plaintiff.

16  AR 474-79. During the evaluation, Dr. Epp conducted a clinical interview, observed Plaintiff,

17  and conducted an MSE of Plaintiff. AR 474-78. Dr. Epp opined Plaintiff had moderate

18  limitations in understanding, remembering and persisting in tasks by following detailed

19  instructions, performing activities within a schedule, maintaining regular attendance, being

20  punctual within customary tolerances without special supervision, being aware of normal hazards

21  and taking appropriate precautions, communicating and performing effectively in a work setting,

22  and completing a normal workday and workweek without interruptions from psychologically

23  based symptoms. AR 476. Dr. Epp found Plaintiff had marked limitations in maintaining

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1  appropriate behavior in a work setting and setting realistic goals and planning independently. AR

2  476. He found Plaintiff had mild or no limitations in the remaining areas of basic work activities.

3  AR 476. Dr. Epp determined Plaintiff had a GAF score of 48. AR 475.

4          Regarding the opinions of Drs. Petaja and Epp, the ALJ stated:

5          Although significant weight is given to the objective test results and observations
           from Dr. Petaja as they comport with the overall record and claimant's daily
6          activities as discussed at Finding 3, little weight is assigned to the GAF score of
           50. I give little weight to this GAF score because as mentioned above, the
7          claimant was not candid with her during the examination regarding why she
           stopped working at Walmart. Additionally, Dr. Petaja considered non-medical
8          factors into this GAF score, such as unemployment and financial problems. The
           creditability of Dr. Petaja's opinion is further reduced because she relied heavily
9          on the claimant's subjective report of symptoms as evidenced by repeated use of
           the phrase, "she reports." That Dr. Petaja relied heavily on the claimant's report is
10         problematic, because as discussed her reports of severity are less than fully
           credible.

11

12         I make a similar finding for the consultative opinion from Carl C. Epp, Ph.D.,
           who completed a more recent exam in June 2013, because the GAF score of 48
13         does not comport with the longitudinal record as stated. The claimant did not tell
           Dr. Epp that she lost her job at Walmart and was convicted of theft in the third
14         degree. That the claimant did not disclose this information is important, for like
           Dr. Petaja, Dr. Epp appears to have accepted her statements. Additionally, Dr.
15         Epp considered non-medical factors such as occupational, educational and
           economic in rating the GAF score. Dr. Epp also indicated that vocational training
16         would not be helpful, contrary to the opinions as noted that she should become
           more active, not less.

17  AR 18 (internal citations omitted).

18          Here, the ALJ discussed the weight given to the GAF scores contained in the opinions of

19  Drs. Petaja and Epp, but failed to discuss the doctors' opinions regarding Plaintiff's functional

20  limitations. *See* AR 18. The ALJ "need not discuss all evidence presented." *Vincent ex rel.*

21  *Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984). However, the ALJ "may not reject

22  'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71

23  (9th Cir. 1995) (*quoting Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1 reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571. Drs. Petaja's and Epp's

2 opinions as to Plaintiff's limitations in her ability to perform basic work activities are related to

3 her ability to be employed, and this evidence is therefore significant and probative. The ALJ

4 discussed the GAF scores and, in a conclusory manner, gave significant weight to Dr. Petaja's

5 objective test results and observations. The ALJ did not, however, discuss the functional

6 limitations opined to by Drs. Petaja and Epp. Further, the ALJ did not include all the opined

7 limitations in the RFC. As the ALJ's decision is silent regarding Drs. Petaja's and Epp's

8 opinions as to Plaintiff's functional limitations, the Court cannot determine if the ALJ properly

9 considered the opined limitations or simply ignored the evidence.

10    Defendant asserts the ALJ properly discounted the opinions of Drs. Petaja and Epp

11 because the opinions were based on Plaintiff's subjective complaints, which were discredited.

12 Dkt. 12, pp. 3-4. In discussing Dr. Petaja's opinion, the ALJ stated Dr. Petaja's opinion was

13 "further reduced because she relied heavily on claimant's subjective report of symptoms[.]" AR

14 18. The ALJ does not adequately explain if she is giving less weight Drs. Petaja's opinion

15 regarding Plaintiff's functional limitations or Plaintiff's GAF score. The ALJ also gave little

16 weight to Dr. Epp's opinion regarding Plaintiff's GAF score, in part, because he relied on

17 Plaintiff's statements. AR 18.

18    The Court cannot "affirm the decision of an agency on a ground the agency did not

19 invoke in making its decision." *Stout v. Comm'r of Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th

20 Cir. 2006). Further, courts "require the ALJ to build an accurate and logical bridge from the

21 evidence to her conclusions so that [the courts] may afford the claimant meaningful review of the

22 SSA's ultimate findings." *Blakes*, 331 F.3d at 569. The ALJ gave less weight to the GAF scores

23 because she found the GAF scores were based on Plaintiff's self-reports. It is not clear the ALJ

24

1  gave little weight to Drs. Petaja's and Epp's opinions as to Plaintiff's functional limitations

2  because the opinions were based on Plaintiff's subjective complaints. As the ALJ did not clearly

3  articulate the doctors' reliance on Plaintiff's self-reports as a reason for giving little weight to the

4  opinions, the Court is not persuaded by Defendant's argument.

5         Regardless, the Court finds the opinions of Drs. Petaja and Epp were not based more

6  heavily on Plaintiff's self-reports and, as such, this is not a specific and legitimate reason

7  supported by substantial evidence for giving little weight to the opinions. An ALJ may reject a

8  physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been

9  properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

10  (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation

11  is distinguishable from one in which the doctor provides his own observations in support of his

12  assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200

13  (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an

14  examining physician's opinion by questioning the credibility of the patient's complaints where

15  the doctor does not discredit those complaints and supports his ultimate opinion with his own

16  observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). "[W]hen an

17  opinion is not more heavily based on a patient's self-reports than on clinical observations, there

18  is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

19  Cir. 2014) (*citing Ryan*, 528 F.3d at 1199-1200).

20         In reaching their opinions, Drs. Petaja and Epp relied on their own observations,

21  documented results of the MSEs, and Plaintiff's self-reports regarding her mental health

22  conditions. AR 331-40, 474-78. Dr. Petaja also reviewed portions of Plaintiff's medical records.

23  *See* AR 331. The two doctors did not discredit Plaintiff's subjective reports, and supported their

24

1  ultimate opinions with the MSE results, personal observations, and clinical interviews. The Court

2  finds the opinions of Drs. Petaja and Epp were not more heavily based on Plaintiff's self-reports.

3  Therefore, this is not a specific and legitimate reason supported by substantial evidence for

4  giving little weight to the two doctors' opinions.[2]

5         The Court concludes the ALJ did not discuss significant, probative evidence contained

6  in Dr. Petaja's and Epp's opinions. Without an adequate explanation, the Court cannot

7  determine if the ALJ properly disregarded the functional limitations included in these two

8  opinions. Accordingly, the ALJ erred. *See Flores*, 49 F.3d at 571 (an "ALJ's written decision

9  must state reasons for disregarding significant, probative evidence"); *Blakes*, 331 F.3d at 569.

10        As discussed above, "harmless error principles apply in the Social Security context."

11 *Molina*, 674 F.3d at 1115. An ALJ's failure to discuss a medical opinion is not harmless error.

12 *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). When the ALJ ignores significant and

13 probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s]

14 an incomplete [RFC] determination." *Id.* at 1161.

15        The ALJ's failure to discuss portions of the opinions submitted by Drs. Petaja and Epp

16 resulted in an incomplete RFC. For example, Dr. Petaja opined Plaintiff was markedly limited in

17 her ability to communicate and perform effectively in the work setting, complete a normal

18 workday/workweek without interruptions, and maintain appropriate behavior in the work setting.

19 AR 333. These limitations were not accounted for in the RFC. *See* AR 15-16. Had the ALJ

20 _____

21        [2] Defendant also asserts the ALJ discounted the opinions of Drs. Petaja and Epp because the opinions were
   inconsistent with the record as a whole. Dkt. 12, p. 3. The ALJ noted Dr. Epp's opinion as to Plaintiff's GAF

22 score was inconsistent with the longitudinal record. AR 18. The ALJ did not find Dr. Epp's opinion as to
   Plaintiff's functional limitations was inconsistent with the longitudinal record. *See* AR 18. As the ALJ did not

23 find the doctors' opinions were inconsistent with the record, the Court cannot rely on this reason to find the ALJ
   properly discounted the opinions of Drs. Petaja and Epp. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)
   ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a

24 ground upon which he did not rely.").

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1   properly considered functional limitations opined to by Drs. Petaja and Epp, she may have

2   included additional limitations in the RFC and in the hypothetical questions posed to the

3   vocational expert. As the ultimate disability determination may change, the ALJ's failure to

4   discuss Drs. Petaja's and Epp's entire opinions is not harmless and requires reversal.

5   **II.        Whether the ALJ erred in finding Plaintiff not disabled at Step 5.**

6   Plaintiff contends the ALJ erred in finding her not disabled at Step 5 of the sequential

7   evaluation process because the RFC and hypothetical questions did not contain all Plaintiff's

8   functional limitations. Dkt. 11, p. 10. The Court concludes the ALJ committed harmful error

9   when she failed to properly consider the opinions of Drs. Donahoe, Petaja, and Epp. *See* Section

10  I, *supra*. The ALJ must therefore reassess the RFC on remand. *See* Social Security Ruling 96-8p

11  ("The RFC assessment must always consider and address medical source opinions."); *Valentine*

12  *v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 ("an RFC that fails to take into account a

13  claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, she

14  must also re-evaluate the findings at Step 5 to determine if there are jobs existing in significant

15  numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*,

16  2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and

17  hypothetical questions posed to the vocational expert defective when the ALJ did not properly

18  consider a doctor's findings).

19  Dated this 7th day of March, 2017.

20

21                                              _____

22                                              David W. Christel
                                                United States Magistrate Judge

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11